UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.   CASE NO: 2:18-cr-20-FtM-29MRM

MIGUEL MCSWAIN

**OPINION AND ORDER**

**I.**

In an Opinion and Order (Doc. #75) filed November 14, 2018, the Court found a violation of defendant's Fourth Amendment rights, suppressed the identification of defendant by two officers as defendant exited Unit A, and reserved ruling as to the possible suppression of additional "fruits" of the Fourth Amendment violation. The Court identified four categories as potential "fruits" subject to suppression: (1) statements made by defendant upon exiting Unit A; (2) the interview of defendant at the police station; (3) the buccal swab taken from defendant at the police station during the interview and its test results; and (4) future identifications of defendant by the two officers, e.g., identifications at trial. The Court scheduled a supplemental hearing to focus on whether any or all of these items should be suppressed. At the invitation of the Court, the parties have filed supplemental memoranda. (Docs. ## 80, 81, 82.) At the

November 29, 2018 hearing neither party presented additional evidence, but rested on the record as previously developed. The Court heard oral arguments from both sides.

**II.**

When defendant exited Unit A at approximately 1:00 p.m., he was arrested, handcuffed, placed in a police vehicle, given full Miranda warnings, and engaged in brief conversation with the officers. Defendant was then taken to the police station, where he gave a video recorded interview to officers beginning at approximately 3:17 p.m. During the interview the officers obtained a buccal swab from defendant at approximately 3:47 p.m., which was later tested.

The parties agreed at oral argument that the four categories of items identified by the Court were all the evidentiary items potentially subject to suppression in this case. Defendant seeks to suppress all such evidence, while the government objects to suppression. The Court discusses each of the four categories in turn.

**A.**

Defendant made brief statements to the officers upon exiting Unit A, some of which preceded Miranda warnings. The government represents that it will not seek to introduce any statement made by defendant at the scene upon his exiting from Unit A in its case in chief at trial. (Doc. #80, p. 6, n.2.) The parties agree, as

does the Court, that the issue of suppression of these statements as a fruit of the Fourth Amendment violation is therefore moot.

**B.**

The next two categories of evidence may be discussed together. At the police station defendant gave a video recorded interview to officers, during which the officers obtained a buccal swab which was later tested. Defendant asserts that both the interview and the swab are fruits of the Fourth Amendment violation, and therefore must be suppressed. The government argues that irrespective of the Fourth Amendment violation, defendant's stationhouse interview is not subject to suppression. (Doc. #80, pp. 6-9.) Applying the same analysis, the government also argues that the buccal swab and its test result are not subject to suppression. (Doc. #80, pp. 10-12.) The government's arguments are premised on New York v. Harris, 495 U.S. 14 (1990).

It is clear that both the stationhouse interview and the swab satisfy the "but for" test. "But for" the Fourth Amendment violation, neither would have been obtained by the police. See Opinion and Order, Doc. #75, pp. 16-17. It is also clear, however, that this alone is insufficient to justify suppression.

> We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made

> has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'

Wong Sun v. United States, 371 U.S. 471, 487–88 (1963) (citation omitted). See Opinion and Order, Doc. #75, p. 17.

The Supreme Court has recognized three exceptions to the exclusionary rule relating to the causal relationship between the unconstitutional act and the discovery of evidence:

> First, the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. See Murray v. United States, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Second, the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source. See Nix v. Williams, 467 U.S. 431, 443–444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Third, and at issue here, is the attenuation doctrine: Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." Hudson, supra, at 593, 126 S.Ct. 2159.

Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016). The government argues that it is unnecessary to reach any of these exceptions, but if the Court disagrees, then the attenuation exception has been satisfied in this case.

**(1) New York v. Harris Is Not Applicable**

The government relies exclusively on New York v. Harris, 495 U.S. 14 (1990) for the proposition that the Court should not suppress the interview or swab, and need not reach the issue of attenuation. The Court finds that Harris is not applicable to the circumstances in this case.

In Harris, the police illegally entered defendant's home and arrested him without a warrant based on probable cause to believe that he had recently committed a murder. Id. at 15–18. Defendant was taken to a police station, where he waived his Miranda rights and provided a statement. Id. at 16. Over the defendant's objection, the trial court allowed the statement made at the police station to be admitted as evidence at the trial. Id.

The Supreme Court found that arresting Harris without an arrest warrant violated the Fourth Amendment, but also found that the pre-existing probable cause to arrest him for the murder rendered his continued custody at the police station lawful. Id. at 18. The Supreme Court found it unnecessary to apply the attenuation analysis because such an analysis "is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal governmental activity.'" Harris, 495 U.S. at 19 (quoting United States v. Crews, 445 U.S. 463, 471 (1980)). Because probable cause to arrest Harris existed at the time of the arrest, and was not predicated

on information obtained from the Fourth Amendment violation, there was no need to discuss the attenuation exception to the exclusionary rule. Id. at 19.

The Supreme Court distinguished Brown v. Illinois, 422 U.S. 590 (1975), Dunaway v. New York, 442 U.S. 200 (1979), and Taylor v. Alabama, 457 U.S. 687 (1982), stating: "In each of those cases, evidence obtained from a criminal defendant following arrest was suppressed because the police lacked probable cause. The three cases stand for the familiar proposition that the indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." Harris, 495 U.S. at 18-19. The Supreme Court held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of [the Fourth Amendment]." Id. at 21.

Harris turned on the fact that defendant's detention was lawful because the police had probable cause to arrest Harris which was not the product of the unconstitutional conduct. Here, despite the government's arguments to the contrary, neither officer had probable cause to arrest McSwain before obtaining the direct evidence from the Fourth Amendment violation. Both officers got a good look at the driver as he made the turn, but

on information obtained from the Fourth Amendment violation, there was no need to discuss the attenuation exception to the exclusionary rule. Id. at 19.

The Supreme Court distinguished Brown v. Illinois, 422 U.S. 590 (1975), Dunaway v. New York, 442 U.S. 200 (1979), and Taylor v. Alabama, 457 U.S. 687 (1982), stating: "In each of those cases, evidence obtained from a criminal defendant following arrest was suppressed because the police lacked probable cause. The three cases stand for the familiar proposition that the indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." Harris, 495 U.S. at 18-19. The Supreme Court held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of [the Fourth Amendment]." Id. at 21.

Harris turned on the fact that defendant's detention was lawful because the police had probable cause to arrest Harris which was not the product of the unconstitutional conduct. Here, despite the government's arguments to the contrary, neither officer had probable cause to arrest McSwain before obtaining the direct evidence from the Fourth Amendment violation. Both officers got a good look at the driver as he made the turn, but

neither recognized him at that time.  This is not sufficient to satisfy the Fourth Amendment.  See Ybarra v. Illinois, 444 U.S. 85, 91 (1979) ("Where the standard is probable cause, a search or seizure must be supported by probable cause particularized with respect to that person.").  It is only when the officers utilized the direct evidence obtained from the Fourth Amendment violation – the observation of McSwain as he exited Unit A - that they recognized McSwain as the driver of the Camry.  This identification, however, has been suppressed, (Doc. #75, pp. 22), and cannot be used by the officers.  Therefore, as a matter of law, neither officer can be deemed to have recognized McSwain upon his exit from Unit A.  Without these identifications, there was no probable cause to establish McSwain as the driver of the Camry who committed a felony violation in the officers' presence.  Given the absence of probable cause, Harris does not support the government's position.  See Bryant v. United States, 599 A.2d 1107, 1112 (D.C. 1991) ("Unlike the situation in Harris, it is not true here that the police acquired nothing from the unlawful entry legally relevant to their ability to detain appellant for a showup identification.  On the contrary, it is apparent that the police acquired the evidentiary basis for detaining him only by discovering him in the house as a result of the illegal search.").

**(2) Attenuation Is Not Established**

The government argues that if Harris does not control, the interview with defendant and the swab are nonetheless sufficiently attenuated to avoid suppression. The Court disagrees.

Since McSwain was arrested without probable cause,

> well-established precedent requires suppression of the confession unless that confession was an act of free will [sufficient] to purge the primary taint of the unlawful invasion. Demonstrating such purgation is, of course, a function of circumstantial evidence, with the burden of persuasion on the State. Relevant considerations include observance of Miranda, [t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct.

Kaupp v. Texas, 538 U.S. 626, 632–33 (2003) (internal citations and punctuation omitted.) Only one of these considerations supports the government. Defendant was given Miranda warnings about two hours prior to his stationhouse statement. "Miranda warnings, alone and per se, cannot always ... break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." Brown, 422 U.S. at 603. All other factors point the opposite way. The statement and swab were obtained two hours after the arrest; there were no intervening circumstances, and as the Court previously found, the conduct which violated the Fourth Amendment was purposeful and flagrant. (Doc. #75, pp. 19-21.)

# C.

The final category of items is future identifications of defendant by the officers, e.g., identifications at trial. Whether a witness's in-court identification will be suppressed after a Fourth Amendment violation is determined by using the Wong Sun standard. United States v. Crews, 445 U.S. 463, 470 (1980). The government argues that the anticipated in-court identifications of defendant by the two officers should not be suppressed because the source of the ability to make the identifications is the lawful observation during the failure to stop, not the unlawful observation upon the compelled exit from Unit A. If there is an independent source, the trial identifications would be admissible. Segura v. United States, 468 U.S. 796, 805 (1984).

The government has proffered that each officer will testify that his identification of defendant comes from their observation of him as the driver of the Camry, not their observation of him coming out of Unit A. As the Court has already found, the observations of the driver of the Camry violated none of defendant's constitutional rights. (Doc. #75, pp. 3-4.) Pursuant to Fed. R. Evid. 104(a) the Court will make this determination at trial outside the presence of the jury. The government shall not elicit testimony from either officer as to an in-court identification of defendant without prior approval of the Court.

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion to Suppress Evidence (Doc. #20) is **GRANTED IN PART AND DENIED IN PART** as set forth above and in the Opinion and Order (Doc. #75) filed on November 14, 2018.

**DONE and ORDERED** at Fort Myers, Florida, this __5th__ day of December, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record